IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DSA PROMOTIONS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL CASE NO. |
| v. | § | 3:17-CV-03055-D |
| | § | |
| VONAGE AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF DSA PROMOTIONS, LLC'S
RESPONSE AND BRIEF IN OPPOSITION TO MOTION TO TRANSFER VENUE**

Plaintiff DSA Promotions, LLC ("DSA") files this Response and Brief in Opposition to Motion to Transfer Venue and would respectfully show the Court as follows:

## I.   INTRODUCTION

This lawsuit arises and is regarding Defendant Vonage America, Inc.'s ("Vonage") refusal to pay DSA amounts due for goods and materials ("Inventory") provided by DSA to Vonage. While DSA and Vonage did execute two contacts that contain forum selection clauses, this case is not within the scope of either forum selection clause. In addition, application of the traditional forum nonconveniens factors weighs in favor of denying Vonage's Motion to Transfer. Accordingly, DSA respectfully requests that the Court deny Vonage's Motion to Transfer Venue.

## II.   FACTUAL BACKGROUND

Vonage is a is a publicly-held Internet telephone service provider that provided business and residential telecommunication services based on voice over Internet Protocol ("VoIP").[1]

---

[1]   DSA requests that the Court take judicial notice of Vonage's 2016 Annual Report ("Annual Report"), found at http://ir.vonage.com/~/media/Files/V/Vonage-IR/documents/annual-reports/vonage-ar-2016.pdf

Vonage had approximately 2.3 million combined consumer subscriber lines and business seats as of December 31, 2016. *Id*. DSA is a Texas limited liability company engaged in the business of marketing, distributing, and selling telecommunication products and services. *App*. 1 at ¶ 3. DSA is owned by Inder and Baljeet Anand, two Indian immigrants who came to the United States in 1995. *App*. 1 at ¶¶ 4-5. On or about January 31, 2012, DSA and Vonage entered into an agreement ("Marketing Agreement") under which Plaintiff was authorized to market and sale Vonage services. *App*. 1 at ¶ 6.

### *Termination of Relationship and Settlement*

On January 5, 2017, Vonage sent a letter ("Termination Letter") terminating the Marketing Agreement. *App*. 5 at ¶ 9. The Termination Letter specifically states that "[t]he effective date for termination will be January 5, 2017." *App*. 5.

On or about January 26, 2017, Vonage drafted a settlement agreement ("Settlement Agreement") that was presented to DSA for signature. *App*. 6-9. Vonage alone drafted the settlement agreement and would not allow DSA to negotiate or otherwise provide any input regarding the terms of the agreement. *App*. 2 at ¶ 11. At the time that the Settlement Agreement was tendered to DSA, Vonage was wrongfully withholding amounts that were properly due and owing to DSA. *App*. 1-2 at ¶¶ 7-8. DSA was told that all rightful payments would be withheld unless the Settlement Agreement was signed as drafted. *App*. 2 at ¶ 13. DSA did not have an attorney review or comment on the terms of the Settlement Agreement. *App*. 2 at ¶ 14. The Settlement Agreement was executed on or about January 30, 3017, and DSA received compensation for payments due and owing through January 5, 2017. *App*. 2 at ¶ 15.

Pursuant to the Settlement Agreement, DSA and Vonage (collectively the "Parties") agreed that "[a]ny disputes ***regarding this Letter Agreement and Release*** [Settlement Agreement] shall

be heard by the courts located in New Jersey." *App*. 8 ¶ 12. (emphasis added). The Parties also agreed that:

> Payment of the Settlement Amount creates a "zero balance" due from Vonage to DSA for any and all disputes that have arisen, or may hereafter arise, with respect to the parties' respective obligations under the Agreement and any and all Statements of Work entered into by the parties ***prior to the Effective Date hereof***.

*App*. 7 ¶¶ 4-5. (emphasis added).

And finally, the Parties also agreed to release claims that accrued from the "beginning of time through the Effective Date." *App*. 7 ¶ 6.

Baljeet S. Anand, the President of DSA, had certain understandings regarding the settlement agreement:

- Once the settlement agreement was finalized, all accounts were deemed settled. *App*. 2 ¶ 16.

- Any future transactions under which DSA would market and sale Vonage services to consumers would be subject to a new Marketing Agreement. *App*. 3 ¶ 17.

### *Tender of Inventory and Disputed Payment*

In February and March of 2017, DSA tendered Inventory it owned to Vonage, with the understanding and expectation that it would be compensated for the fair market value of the Inventory. *App*. 3 ¶ 18. Specifically, DSA tendered the Inventory, and Vonage accepted the tender and collected the Inventory from multiple locations throughout the United States, including Dallas and other areas of Texas. *App*. 3 ¶ 19. Based upon conversations between DSA and Vonage, it was understood that DSA would be compensated for the Inventory once accepted by Vonage. *App*. 3 ¶ 21.

Vonage's payment for the Inventory was not immediately forthcoming, and on April 6, 2017, Plaintiff sent Defendant a net-15 invoice ("Invoice") in the amount of approximately $162,000.00, the fair market and reasonable value for the Inventory. *App*. 10.

Vonage failed to make payment, and DSA subsequently retained counsel. *App*. 3 ¶ 23. On May 8, 2017, counsel for Plaintiff sent a demand letter ("Demand Letter") requesting that Defendant cure its default and make full payment of the Invoice. *App*. 10. Vonage continues to refuse to make payment, and on September 28, 2017, DSA filed this case in the 44th Judicial District Court in Dallas County, Texas alleging claims for suit on a sworn account, quantum meruit, and unjust enrichment. *See* Def's Notice of Removal, ECF No. 1. On November 6, 2017, Vonage timely removed the case to the Northern District of Texas. *See Id.*

### III.   LEGAL STANDARD

**A.   General Principles**

The United States Supreme Court has held that the appropriate way to enforce a forum selection clause is through the doctrine of *forum non conveniens*, codified in 28 U.S.C.S. § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, (2013). Under the doctrine of *forum non conveniens*, courts determining whether to enforce a forum selection clause should consider:

(1) whether the clause is applicable (in other words, are the claims at issue in the case within the scope of the forum selection clause);

(2) whether the forum selection clause is enforceable; and

(3) whether enforcement of the forum selection clause is outweighed by various public interest factors.

*Weber v. PACT XPP Techs., AG*, 811 F.3d 758 (5th Cir. 2016); *DBS Solutions LLC v. Infovista Corp.*, No. 3:15-CV-03875-M, 2016 U.S. Dist. LEXIS 95368 at *5 (N.D. Tex. July 21, 2016).

B.     **Applicability and Scope**

A forum selection clause that is outside of the scope of the claims at issue in a case should not be applied. *Braspetro Oil Servs. Co. - Brazil v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 616 (5th Cir. 2007) ("Before we can consider enforcing a forum-selection clause, we must first determine 'whether the clause applies to the type of claims asserted in the lawsuit."). To determine whether a forum-selection clause applies to the type of claims asserted in a lawsuit, courts "look to the language of the parties' contract to determine which causes of action are governed by the forum selection clauses." *Marinechance Shipping, Ltd. V. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998). "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Aerus LLC v. Pro Team, Inc.,* 2005 U.S. Dist. LEXIS 8559 at *1 (N.D. Tex. May 9, 2005). In other words, the applicability and scope a forum selection clause is determined under contract principles. *See Barnett v. DynCorp International, L.L.C.*, 831 F.3d 296, 301-02 (5th Cir. 2016),

Because the scope of a forum selection clause is based in contract law, courts in the Fifth Circuit apply the forum state's choice-of-law rules (here, Texas) to determine which law to use in the interpretation of the scope of the forum selection clause. *See Barnett*, 831 F.3d at 301-02; *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770-772 (5th Cir. 2016); *TSI USA, LLC v. Uber Techs.*, Inc., No. 3:16-cv-2177-L, 2017 U.S. Dist. LEXIS 3783 at *5-13 (N.D. Tex. Jan. 11, 2017); *DBS Solutions*, 2016 U.S. Dist. LEXIS 95368 at *5. Texas courts "permit choice-of-law agreements and the default position is that they are enforceable." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015); *DBS Solutions*, 2016 U.S. Dist. LEXIS 95368 at *6. Thus, as Vonage concedes, the choice-of-law provision in the forum selection clause dictates that New Jersey law

governs. *See DBS Solutions*, 2016 U.S. Dist. LEXIS 95368 at *6; *see also* Def's Mot. Trans. Venue at p. 10, ECF No. 8.[2]

**C.     New Jersey Contract Law**

As a preliminary matter, the Third Circuit will not enforce a forum selection clause when the subject of the dispute does not arise from the contract containing the clause. *See Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 293 (3d Cir. 1994). (refusing to apply a forum selection clause from one contract between the parties to a dispute arising out of a second contract). As explained, "[t]he critical question is whether the claims fall within the scope of the forum selection clause as written. To answer this question, the Third Circuit has adopted a test which looks to whether the asserted claim 'ultimately depends on the existence of [the contract]' between the parties." *Jayson Co. v. Vertical Mkt. Software & Vertical Software Servs.*, No. 05-3883, 2006 U.S. Dist. LEXIS 30638, at *4 (D.N.J. May 18, 2006) (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)). "In other words, the cause of action must be integrally related to the contractual relationship that is reflected in the agreement." *Circuport, Inc. v. David C. Dlesk & Phase-N Corp.*, No. 11-00369, 2011 U.S. Dist. LEXIS 60889 at *5-6 (D.N.J. June 6, 2011). Courts in the Third Circuit routinely decline to apply forum selection clauses if the subject of the dispute did not arise from the contract containing the clause. *See, e.g., Cottman*, 36 F.3d at 293 (refusing to apply a forum selection clause from one contract between the parties to a dispute arising out of a second contract); *Jayson Co.*, 2006 U.S. Dist. LEXIS 30638 at *12-19 (refusing to apply a forum selection clause from one contract between the parties to a dispute

---

[2]     The application of New Jersey law provides the same results. *See generally Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183-84 (3d Cir. 2017) (applying the forum state's choice-of-law rules to determine which state's law to use in the interpretation of the scope of the forum selection clause).

arising out of a second contract); *Toner v. Miller*, No. 03-3498, 2003 U.S. Dist. LEXIS 18090, at *4-5 (E.D. Pa. Sept. 8, 2003) (refusing to enforce a forum selection clause vesting state and federal courts located in Columbus, Ohio with exclusive jurisdiction "in any action arising out of or relating to this [confidentiality] Agreement," because the lawsuit did not fall within the scope of the forum selection clause).

When interpreting a forum selection clause, New Jersey courts look "to the text of the contract to determine whether it unambiguously states the parties' intentions." *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) ("To be 'unambiguous,' a contract clause must be reasonably capable of only one construction.") (citations omitted). If in its examination, a court finds "the terms . . . are clear and unambiguous, there is no room for construction and the court must enforce those terms as written," *2000 Clements Bridge, LLC v. OfficeMax N. Am., Inc.*, No. 11-0057, 2013 U.S. Dist. LEXIS 102444, at *15 (D.N.J. July 23, 2013) (citing *Watson v. City of E. Orange*, 175 N.J. 442, 447 (2003)). If however, the "terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists. In that case, a court may look to extrinsic evidence as an aid to interpretation." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008). Further, "[w]here a word or phrase is ambiguous, a court generally will adopt the meaning that is most favorable to the non-drafting party if the contract was the result of negotiations between parties of unequal bargaining power." *Id*.

D.  **Enforceability**

If it is determined that claims within the scope of a forums selection clause, a court should then determine whether the forum selection clause is enforceable. Under federal law, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by

the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum. state. *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991); *M/S Bremen*, 407 U.S. at 12-13, 15, 18. It is worth noting that the presumption to enforce a forum selection clause only applies, however, when the dispute falls within the scope of the clause. *Jayson Co.*, 2006 U.S. Dist. LEXIS 30638 at *6.

E.  **28 U.S.C. § 1404(a) Private and Public Interest Factors**

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) "is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The decision to transfer a pending case is committed to the sound discretion of the district court. *Jarvis Christian College v. Exxon Corporation*, 845 F.2d 523, 528 (5th Cir. 1988).

## IV.  ARGUMENTS AND AUTHORITIES

A.  The Claims in This Case Are Outside of the Scope of the Forum Selection Clause

   1.  **DSA's claims are not integrally related to the Settlement Agreement or the Marking Agreement.**

Vonage has mischaracterized DSA's claims to advance its argument that this case must be transferred. But simply put, DSA's claims of suit on a sworn account, quantum meruit, and unjust enrichment are not dependent upon, or even related to the Settlement and Marketing Agreements. *See generally Circuport, Inc. v. David C. Dlesk & Phase-N Corp.*, No. 11-00369, 2011 U.S. Dist. LEXIS 60889 at *5-6 (D.N.J. June 6, 2011) (requiring that claims be integrally related to a forum selection clause"). To be sure, the Settlement Agreement outlines the responsibilities of the parties regarding the termination of their relationship. But there is nothing in the Settlement or Marketing Agreements that govern the parties' relationship moving forward. Likewise, there is nothing in the Settlement Agreement obligating DSA to provide Inventory to Vonage as a term of settlement. The tender and acceptance of the Inventory was a separate transaction outside of the scope of the forum selection clause.

Vonage seems to argue that the Settlement Agreement controls transactions between the parties after the Effective Date. This argument is misplaced. Indeed, the Settlement Agreement, ***by its terms*** created a "zero balance" due from Vonage to DSA for any and all disputes that have arisen or may hereafter arise, with respect to the parties' respective obligations under the Agreement and any and all Statements of Work entered into by the parties ***prior to the Effective Date hereof***. *App*. 7 ¶¶ 5-6 (emphasis added).

Applying Vonage's argument to subsequent transactions would produce absurd results. Namely that Vonage is not obligated to compensate DSA for any subsequent transactions because the Settlement Agreement created a "zero balance" for perpetuity, regardless of subsequent transactions between the parties.

**2.      The forum selection clause in the Marketing Agreement did not survive termination.**

The Parties expressly agreed that certain rights and obligations would continue beyond the termination or expiration of the Marketing Agreement. *App.*13 ¶7.17. Specifically, the Agreement provides that the provisions regarding "ownership of intellectual property, confidentiality, and limitation of liability will survive." *App.* 13 ¶ 7.17.  Noteworthy is the fact that the forum selection clause was not among the provisions that survive the termination of the Agreement. Vonage does not dispute that the Marketing Agreement was terminated prior to DSA filing suit. Def's Mot. Trans. Venue at p. 5, ECF No. 8., which renders the Forum Selection Clause inapplicable.

The rules of contract construction establish that the forum selection clause in the Marketing Agreement does not apply to this post-termination dispute. Under the "plain meaning" rule of contract construction, when a contract provision is unambiguous, as is the Survival Clause in this case, the court should apply the plain meaning of the contract language and enforce the contract as written. *2000 Clements Bridge, LLC v. OfficeMax N. Am., Inc.*, No. 11-0057, 2013 U.S. Dist. LEXIS 102444, at *15 (D.N.J. July 23, 2013) (citing *Watson v. City of E. Orange*, 175 N.J. 442, 447 (2003)). The rule of construction "expressio unius est exclusio alterius," also compels the same conclusion: by leaving the forum selection clause off the list of surviving provisions in the survival clause, the Parties intentionally excluded it from post-termination application as a matter of contract law. *See generally Armco, Inc. v. Glenfed Financial Corp.*, 720 F. Supp. 1129, 1158 n.52, (D.N.J. 1989) ("A rule of contract interpretation is that language in a contract must be

construed in the context of that instrument as a whole.") (citations omitted). Accordingly, Vonage's attempt to rely on the forum selection clause contained in the Marketing Agreement should be rejected.

3. **The forum selection clause in the Settlement Agreement is clear and unambiguous.**

Both DSA and Vonage agree that the forum selection clause in the Settlement Agreement is clear and unambiguous. The agreement (1) governs the terms of the Parties' relationship as it relates to settlement; (2) creates a "zero balance" for disputes and work through the Effective Date; and (3) provides that "[a]ny disputes *regarding this Letter Agreement and Release* shall be heard by the courts located in New Jersey."

This is not a dispute "regarding the Letter Agreement and Release," nor is it a dispute "regarding" settlement. Rather, DSA's claims are "regarding" inventory (owned by DSA) that Vonage accepted but now refuses to pay for. Vonage's failure to pay for the Inventory is separate and apart from its duties under the Settlement Agreement, and DSA should not be bound by the forum selection clause in the Settlement Agreement.

4. **Any ambiguities in the forum selection clause should be interpreted in a manner favorable to DSA.**

Contrary to Vonage's allegations, DSA and Vonage do not share equal bargaining power. Vonage drafted the settlement agreement and would not allow DSA to provide any input or otherwise negotiate with DSA regarding the terms of the agreement. *App.* 2 ¶ 11. At the time that the Settlement Agreement was tendered to DSA, Vonage was wrongfully withholding amounts that were properly due and owing to DSA. *App.* 1 ¶ 7. DSA was told that all rightful payments would be withheld unless the Settlement Agreement was signed as drafted. *App.* 2 ¶ 13.

Given this disparity in bargaining power, the economic duress DSA endured, and Vonage's unfair use of its bargaining power, DSA respectfully requests that any ambiguities in the forum selection clause be interpreted in a manner favorable to DSA pursuant to New Jersey contract law. *See Chubb Custom Ins. Co.,* 195 N.J. at 238 ("[w]here a word or phrase is ambiguous, a court generally will adopt the meaning that is most favorable to the non-drafting party if the contract was the result of negotiations between parties of unequal bargaining power.").

B.  **The Forum Selection Clause in the Settlement Agreement is Unenforceable.**

As discussed, DSA contends that its claims in this matter are outside of the scope of the forum selection clauses in the Settlement and Marketing Agreements. But, even if its claims are within the scope of the clauses, the Court should find that the enforcement of the forum selection clause in the Settlement Agreement is unenforceable due to Vonage's overweening bargaining power and its unfair *use* of this bargaining power. Indeed, Vonage took advantage of DSA and used its overwhelming bargaining power to force DSA to sign the Settlement Agreement. *App*. 1-2 ¶¶ 7-14. As such, the Court should hold that the forum selection clause is unenforceable.

C.  **Application of the Traditional *Forum Nonconveniens* Factors Weighs in Favor of Denying ESI's Motion to Transfer.**

As a preliminary matter, given the inapplicability of a valid forum selection clause in this case, the Court should engage in a traditional *forum non conveniens* analysis considering: (1) availability of an alternative forum; (2) amount of deference to be accorded to the plaintiff's choice of forum; (3) private interest factors; and (4) public interest factors. *Tech. Dev. Co., Ltd. v. Onischenko,* 174 F. App'x 117, 119–20 (3d Cir. 2006). The decision to dismiss for *forum non conveniens* is, "the ultimate inquiry is where trial will best serve the convenience of the parties and

the ends of justice." *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632–33 (3d Cir. 1989) (citation omitted).

If the Court finds that the forum selection clause is inapplicable, the Court should then consider both public and private interest factors in its proper venue analysis under 28 U.S.C. § 1404(a). Under a traditional analysis, Defendant has the burden of demonstrating why the forum should be changed, *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). In determining venue, Plaintiff's choice of forum is to be given substantial deference, *In Re Horseshoe Entm't*, 337 F.3d 429 (5th Cir. 2003). Defendant must demonstrate that the balance of convenience and justice weighs heavily in favor of transfer. *Von Graffenreid v. Craig*, 246 F. Supp. 2d 533, 563 (N.D. Tex. 2003). DSA will address the public and private interest factors that weigh in favor of maintaining venue in the Northern District of Texas.

**1.      Public Interest Factors**

The relevant public interest factors in this case are (1) the local interest in having localized interests decided at home. *In re Volkswagen of Am. Inc.*, 506 F.3d 376, 380 (5th Cir. 2007); and (2) the familiarity of the forum with the law that will govern the case.

It is well-established that the local interest in deciding issues at home favors transfer to a venue that will vindicate such an interest. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, (1981). The Fifth Circuit has noted that when the underlying facts of a case are overwhelmingly tied to one locale, then the place of the alleged wrong "is a consideration that properly can be considered within the analysis of the local interest in having localized interests decided at home." *In re Volkswagen of Am. Inc.*, 506 F.3d at 387 n.7. Here, despite Vonage's characterization, the events giving rise to this suit are not "DSA's marketing of Vonage's products and services at movie theaters" throughout the country. Rather, this case is about Vonage's refusal to pay DSA for

Inventory. DSA is a Texas limited liability company. The Inventory at issue was located, in part, in Dallas and other areas of Texas. *App*. 3 ¶ 20. The harm suffered was felt in Texas. Given these facts, this factor weighs in favor of maintaining this case In the Northern District of Texas.

Likewise, Vonage's argument that the choice-of law provisions in the Settlement and Marketing Agreements apply to this case are misguided. This is a simple suit on a sworn account, and as discussed above, neither the Settlement nor Marketing Agreements are applicable in this matter. As such, Texas law will apply, and the familiarity of the forum with the law that will govern the case weighs in favor of maintaining this case in the Northern District of Texas.

### 2. Private Interest Factors

For 28 U.S.C.S. § 1404(a) purposes, the determination of "convenience" turns on a number of factors, none of which can be said to be of dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Action Indus., Inc. v. U.S. Fid. & Guar. Corp*., 358 F.3d 337, 340 (5th Cir. 2004). None of the private interest factors support transfer of this case from the Northern District of Texas. DSA has at least one Texas witnesses with knowledge of the facts of this case who will testify on its behalf. *App*. 3 ¶ 28. In addition, the transfer of this case to New Jersey will create severe financial hardship for the owner and manager of DSA, such that it could be impossible for DSA to pursue its claims. *App*. 3 ¶24-26. As such, the private interest factors also support maintaining this case in the Northern District of Texas.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff DSA Promotions, LLC respectfully requests that the Court deny Vonage's Motion to Transfer Venue, and grant any further relief to which Plaintiff is entitled.

Dated: December 4, 2017

                Respectfully Submitted:

                s/ Monica M. Smith
                Monica Michelle Smith
                Texas State Bar No. 24039182
                msmith@smithdownsgroup.com

                **SMITH DOWNS GROUP, PLLC**
                2932 Main, Suite 104
                Dallas, Texas 75226
                214.605.8886 (Telephone)
                214.481.3845 (Fax)

                **ATTORNEYS FOR PLAINTIFF,
                DSA PROMOTIONS, LLC**

## CERTIFICATE OF SERVICE

I certify that on December 4, 2017, I served all counsel of record in this matter with a true and correct copy of the foregoing document via ECF.

                s/ Monica M. Smith
                Monica M. Smith