IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DSA PROMOTIONS, LLC,                    §
                                        §
                    Plaintiff,          §
                                        §
VS.                                     §        Civil Action No. 3:17-CV-3055-D
                                        §
VONAGE AMERICA, INC.,                   §
                                        §
                    Defendants.         §

MEMORANDUM OPINION
AND ORDER

Defendant's motion to transfer under 28 U.S.C. § 1404(a) presents the question whether this suit should be transferred to the District of New Jersey under the terms of forum-selection clauses in two agreements. Concluding that it should be transferred under the forum-selection clause in at least one of the agreements, the court grants the motion.

I

This is an action by plaintiff DSA Promotions, LLC ("DSA") against defendant Vonage America, Inc. ("Vonage"), in which DSA brings claims on a sworn account and for quantum meruit and unjust enrichment. Vonage removed the case to this court based on diversity of citizenship and now moves under 28 U.S.C. § 1404(a) to transfer the suit to the District of New Jersey under the terms of contractual forum-selection clauses in two agreements.

Vonage is an Internet telephone service provider that offers business and residential telecommunication services based on Voice over Internet Protocol (commonly referred to

as "VoIP") technology. DSA is a limited liability company that markets, distributes, and sells telecommunication products and services.

In 2012 Vonage and DSA entered into a contract ("Marketing Agreement") for DSA to market, sell, and distribute Vonage's services and products. DSA agreed to sell these products "in designated locations in the U.S. in accordance [with] the terms of . . . executed Statement[s] of Work." D. App. 18. The Marketing Agreement provided that its terms "shall be construed in accordance with the laws of the State of New Jersey, excluding such State's conflict of law provisions. Any claim arising out of or in any way related to this Agreement shall be brought in the state or federal courts sitting in New Jersey." *Id.* at 14. It also stated that certain rights would survive when the Marketing Agreement terminated: "[t]he rights and obligations of either Party that by their natures would continue beyond the termination or expiration of this Agreement shall survive such termination or expiration. For example, the provisions of this Agreement regarding ownership of intellectual property, confidentiality, and limitation of liability shall survive." *Id.*

In accordance with the Marketing Agreement, Vonage and DSA then executed two statements of work: one dated January 31, 2012 ("SOW #1"), and the other dated July 15, 2015 ("SOW #2"). Under SOW #1, DSA agreed to market and sell Vonage's products in various movie theaters located in New Jersey, Virginia, Illinois, Georgia, Texas, and California. SOW #1 provided that DSA would hold and manage a select amount of inventory of Vonage's products, but that "[o]wnership in Vonage product remains with

Vonage until purchased by the customer." D. Supp. App. 7. Moreover, it stated that its terms "shall be governed by the Marketing Agreement." *Id.* at 3.

SOW #2 superseded SOW #1, and aimed to "expand the special events and locations in which [DSA] can sell Vonage Products and Services" to "grocery stores, restaurants, flea markets, fairs, and amusement parks." *Id.* at 47. Regarding the products themselves, SOW #2 stated that they "shall be provided to [DSA] on a consignment model. [DSA] shall at no time be deemed a purchaser of the Products or to have any interest therein, legal or equitable, unless [DSA] purchases such Products for its own account." *Id.* at 50. As with SOW #1, SOW #2 was "governed by the Marketing Agreement." *Id.* at 47.

Vonage terminated the Marketing Agreement on January 5, 2017. Later that month, on January 26, Vonage and DSA entered into a settlement agreement ("Settlement Agreement"). As part of the Settlement Agreement, Vonage supplemented a previous $463,650 payment to DSA with an additional $400,000. The Settlement Agreement stated that this "shall be deemed full and final compensation for any payments due and owing, or which may become due and owning, from Vonage to DSA under the [Marketing Agreement]." *Id.* at 72-73. This payment also

> create[d] a "zero balance" due from Vonage to DSA for any and all disputes that have arisen, or that may hereafter arise, with respect to the parties' respective obligations under the [Marketing Agreement] and any and all Statements of Work entered into by the parties prior to the Effective Date hereof.

*Id* at 73. The Settlement Agreement also contained the following choice of law and forum-

selection clause: "[The Settlement Agreement] will be governed by and construed in accordance with the laws of the State of New Jersey, without reference to any conflicts of law principles. Any disputes regarding this Letter Agreement and Release shall be heard by the courts located in New Jersey." *Id.* at 74.

DSA alleges that, in February and March of 2017, it "tendered Inventory remaining in its possession, custody, and control to [Vonage], with the expectation that it would be compensated for the fair market value of these goods." Pet. at 3. Vonage accepted the inventory, but refused to pay DSA's accompanying invoice. After sending Vonage a demand letter, DSA filed this suit in Texas state court.

Vonage removed the case to this court, and now seeks to transfer the suit to the District of New Jersey in accordance with the forum-selection clauses contained in the Marketing and Settlement Agreements.[1] DSA opposes the motion.

## II

28 U.S.C. § 1404(a) codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, ___ U.S. ___, 134 S.Ct. 568, 580 (2013).

---

[1]Vonage has also filed a motion for leave to file a supplemental appendix. The supplemental appendix includes the two statements of work that DSA and Vonage signed in the course of their business relationship. Vonage explains that these documents respond to arguments DSA makes in its briefing, and that DSA is familiar with the documents. DSA has not filed a response or objection to Vonage's motion. Accordingly, the court grants the motion, directs the clerk of court to file the supplemental appendix, and considers the supplemental appendix in reaching its decision today.

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In cases where there is no forum-selection clause, district courts "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 134 S.Ct. at 581. District courts analyze § 1404(a) motions under the familiar private- and public-interest factors[2] and "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 581 (quoting § 1404(a)).

But in cases where there is a valid forum-selection clause, "[t]he calculus changes," because the clause "'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In that circumstance, district courts must "adjust their usual § 1404(a) analysis in three ways." *Id.* "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer . . . should not consider arguments about the parties' private interests." *Id.* at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer

---

[2]In *Atlantic Marine* the Court identified non-exclusive private- and public-interest factors. *Atl. Marine*, 134 S.Ct. at 581 n.6.

of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Accordingly, in a case involving a forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575.

DSA relies on three grounds to oppose Vonage's motion to transfer: (1) the instant case falls outside the scope of the forum-selection clauses in the Marketing Agreement and the Settlement Agreement; (2) it would be unreasonable to enforce either forum-selection clause because of the unequal bargaining power between DSA and Vonage; and (3) the public-interest factors support retaining the case in this district rather than transferring it to the District of New Jersey.

III

The court first addresses whether the forum-selection clause in either the Marketing Agreement or the Settlement Agreement controls this case.

A

DSA maintains that its claims do not fall within the scope of either forum-selection clause. It posits that the Marketing Agreement's forum-selection clause did not survive when Vonage terminated the Marketing Agreement. And DSA contends that, because Vonage's failure to pay for the inventory is separate from its duties under the Settlement Agreement, the Settlement Agreement's forum-selection clause does not apply either.

Vonage maintains that the forum-selection clauses of both the Settlement Agreement and the Marketing Agreement govern DSA's claims.

## B

Although federal law "governs the *enforceability* of forum selection clauses, it does not govern the *interpretation* of such clauses." *DBS Sols. LLC v. Infovista Corp.*, 2016 WL 3926505, at *2 (N.D. Tex. July 21, 2016) (Lynn, C.J.) (emphasis in original) (citing *Weber v. PACT XXP Techs. AG*, 811 F.3d 758, 770 (5th Cir. 2016)). Federal courts sitting in diversity must apply the forum state's choice-of-law rules. *Weber*, 811 F.3d at 770.

Texas courts "permit choice-of-law agreements and the default position is that they are enforceable." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015); *see also Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014). Here, both Vonage and DSA assert that the choice-of-law provisions of the Marketing Agreement and the Settlement Agreement—which specify New Jersey law—control their respective interpretations. The court therefore concludes that the forum-selection clauses should be interpreted according to New Jersey law.

Under New Jersey law, "it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties." *Pacifico v. Pacifico*, 920 A.2d 73, 78 (N.J. 2007) (citing *Tessmar v. Grosner*, 128 A.2d 467, 471 (N.J. 1957)). "A court's role is to consider what is 'written in the context of the circumstances' at the time of the drafting and to apply a rational meaning in keeping with the 'expressed general

purpose.'" *Sachau v. Sachau*, 17 A.3d 793, 796 (N.J. 2011) (quoting *Atl. N. Airlines, Inc. v. Schwimer*, 96 A.2d 652, 656 (N.J. 1953)). As a general rule, "'courts should enforce contracts as made by the parties.'" *Henchy v. City of Absecon*, 148 F.Supp.2d 435, 439 (D.N.J. 2001) (quoting *Marchak v. Claridge Commons, Inc.*, 633 A.2d 531, 535 (N.J. 1993)).

## C

The court begins by addressing the scope of the Settlement Agreement's forum-selection clause. It states that "[a]ny disputes regarding this Letter Agreement and Release shall be heard by the courts located in New Jersey." D. App. 74. In the Settlement Agreement itself, the parties agreed that Vonage's January 2017 payments to DSA

> create[d] a "zero balance" due from Vonage to DSA for any and all disputes that have arisen, or that may hereafter arise, with respect to the parties' respective obligations under the [Marketing Agreement] and *any and all Statements of Work* entered into by the parties prior to the Effective Date hereof.

*Id.* at 73 (emphasis added).

DSA maintains that "[t]he Settlement Agreement explicitly governs the relationship of the parties through January 5, 2017 [the Effective Date], but not beyond that date." Pet. at 3. Moreover, it posits that this case is not a dispute "regarding the Letter and Agreement" but is instead about Vonage's failure to pay for the inventory that DSA returned. P. Br. 11. Therefore, according to DSA, the Settlement Agreement's forum-selection clause should not apply. The court disagrees.

- 8 -

The Settlement Agreement unambiguously covers all disputes regarding the parties' respective obligations under the Marketing Agreement and "any and all Statements of Work." D. App. 73. DSA's claims in this case center around "[i]nventory remaining in its possession" following the conclusion of its business relationship with Vonage. Pet. at 3. This inventory consisted of the Vonage products that DSA obtained from Vonage in the course of fulfilling its obligations under the Marketing Agreement, SOW #1, and SOW #2. Both SOW #1 and SOW #2 contained terms governing the ownership rights of, and the return procedure for, this inventory.

DSA now maintains that Vonage owes DSA payment for this inventory. Under the Settlement Agreement, however, there is a "'zero balance due' from Vonage to DSA" for all current or future disputes "with respect to the parties's obligations under . . . any and all Statements of Work." D. App. 73. Although DSA returned and attempted to bill Vonage for the inventory after the Settlement Agreement was signed, this does not alter the fact that this claim concerns the parties' obligations under the Marketing Agreement and Statements of Work—the very subject matter of the Settlement Agreement. For these reasons, the court concludes that this lawsuit is a dispute "regarding" the Settlement Agreement. Therefore, under the Settlement Agreement's plain language, the forum-selection clause applies.[3]

---

[3]Because the court concludes that the Settlement Agreement's forum-selection clause applies to the instant lawsuit, it need not address whether the Marketing Agreement's forum selection clause is applicable.

IV

Having concluded that the Settlement Agreement's forum-selection clause is applicable to this lawsuit, the court now turns to the question whether it is enforceable. This question merges with whether DSA can establish that it would be unreasonable to enforce the forum-selection clause in the Settlement Agreement.

A

Federal law governs whether the Settlement Agreement's forum-selection clause is binding in this action. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) ("The proper law to apply to [determine the enforceability of a forum-selection clause] is federal, whether jurisdiction be based on diversity, a federal question, or some combination of the two."). "Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (quoting *Haynsworth*, 121 F.3d at 963). "Such clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (per curiam) (quoting *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 10 (1972)). A forum-selection clause may be considered unreasonable if

> (1) the incorporation of the forum selection clause into the agreement was the product of the fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave

> inconvenience or unfairness of the selected forum; (3) the
> fundamental unfairness of the chosen law will deprive the
> plaintiff of a remedy; or (4) enforcement of the forum selection
> clause would contravene a strong public policy of the forum
> state.

*Id.* (quoting *Haynsworth*, 121 F.3d at 963). "To qualify as unreasonable, the fraud and

overreaching must be specific to the forum selection clause." *Id.* (quoting *Haynsworth*, 121

F.3d at 963).

B

DSA maintains that the forum-selection clause is a product of overreaching.[4] It

contends that Vonage leveraged its "overweening bargaining power" to withhold any

payment until DSA signed the Settlement Agreement; that Vonage provided all of the terms

of the contract; and that Vonage "would not allow DSA to provide any input or otherwise

negotiate with DSA." P. Br. 11-12. DSA posits that, as a result, the forum-selection clause

is unreasonable and unenforceable.

The court concludes that DSA has failed to demonstrate overreaching to the degree

necessary to make the forum-selection clause unreasonable. DSA attacks the formation of

the Settlement Agreement itself, not merely the forum-selection clause. But "[a]llegations

that the entire contract was procured as the result of fraud or overreaching are inapposite to

our [forum selection clause] enforceability determination." *BeautiControl, Inc. v. Burditt*,

---

[4]"'Overreaching' is 'that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties.'" *Haynsworth*, 121 F.3d at 965 n.17 (quoting Black's Law Dictionary 1104 (6th ed. 1990)). It is "a nebulous concept at best." *Id.* at 965.

2001 WL 1149360, at *4 (N.D. Tex. Sept. 26, 2001) (Lynn, J.) (internal quotation marks omitted) (brackets in original) (quoting *Afram Carriers v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998)). The overreaching "must be specific to the forum selection clause." *Braspetro Oil*, 240 Fed. Appx. at 615.

Even if the court could consider these facts, they do not amount to overreaching. Courts regularly uphold forum selection clauses as parts of contracts of adhesion not subject to negotiation—even when enforced against a relatively unsophisticated party. *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (upholding forum-selection clause against unsophisticated cruise ship passenger despite disparity in parties' bargaining power and that contract had not been subject to negotiation); *Haynsworth*, 121 F.3d at 965 (enforcing forum selection clause "notwithstanding the disparity in the parties' bargaining power"); *Abramson v. America Online*, 393 F.Supp.2d 438, 442 (N.D. Tex. 2005) (Lynn, J.) (holding that including a boilerplate forum-selection clause in contract of adhesion did not amount to overreaching). Here, DSA, as another business dealing at arms length, was more sophisticated than many of the individual consumers in the cited cases. For these reasons, the court concludes that the forum-selection clause was not a product of overreaching.

Because DSA has failed to prove overreaching, and asserts no other grounds for unreasonableness, the court holds that DSA has not met its heavy burden of proving that the enforcement of the forum-selection clause is unreasonable and therefore that the forum-

selection clause of the Settlement Agreement is unenforceable.

V

DSA also contends that the public-interest factors support retaining the case in this district.[5]  The court considers each factor in turn.

A

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues.  DSA does not address this factor.  Vonage cites U.S. Courts data to posit that different statistics favor different courts.  For example, "a motion may be decided more quickly in New Jersey than in Texas, while in Texas the case may go to trial sooner."  D. Br. 14.

The data demonstrate that the District of New Jersey has a slightly faster median time from filing to deposition in civil cases—7.1 months compared to 7.3 months.  On the other hand, the median time from filing to trial is faster in the Northern District of Texas—20.1 months compared to 35.8 months.  The court holds that this factor only slightly favors retaining the case in this district.

B

The second public interest factor evaluates the local interest in the dispute.  "This factor generally favors the venue where the acts giving rise to the lawsuit occurred."

---

[5]DSA also discusses the private-interest factors in its briefing.  Because the court has held that the Settlement Agreement's forum-selection clause is applicable and enforceable, the court does not address them.  *See supra* at § II.

*Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)). DSA has demonstrated that Texas has an interest in this dispute because the inventory at issue was located in Texas and DSA is a Texas company. At the same time, the inventory was returned to Vonage's headquarters, which are located in New Jersey. From these facts, the court concludes that this factor is neutral.

C

The third factor addresses the familiarity of the forum with the law that will govern the case. As the foregoing analysis demonstrates, this lawsuit is a dispute "regarding" the Settlement Agreement. Therefore, New Jersey law will govern in accordance with the Settlement Agreement's choice-of-law provision. Although this court is able to apply New Jersey law, a federal court in New Jersey will have more familiarity with its application. *See, e.g.*, *Abramov v. Otis Elevator*, 2011 WL 5081560, at *8 (N.D. Tex. Oct. 25, 2011) (Fitzwater, C.J.) (concluding that while court could apply Nevada law, court in Nevada would be more familiar with that state's law); *Metromedia Steakhouses*, 2008 WL 794533, at *4 (concluding that while court could apply Puerto Rico law, court in Puerto Rico would be more familiar with that commonwealth's law). Therefore, the court holds that this factor favors transfer.

D

The fourth public interest factor considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law. There is no suggestion in the briefing that there is a problem of conflict of laws or applying foreign laws. The court therefore concludes that this factor is neutral.

E

Having analyzed the public-interest factors, the court concludes that DSA is unable to overcome the governing forum-selection clause. "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 134 S.Ct. at 581 (first alteration added) (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). "As the party acting in violation of the forum-selection clause, [DSA] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 583.

> Because [the public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," such cases will not be common.

*Id.* at 582 (quoting *Stewart*, 487 U.S. at 30-31). Given the analysis of the factors, DSA has failed to meet its burden of demonstrating that this is an unusual and uncommon case in which the public-interest factors overwhelmingly disfavor a transfer.

* * *

For the reasons explained, the court grants Vonage's motion to transfer and transfers this action to the District of New Jersey. The clerk of court shall effect the transfer according to the usual procedure.

**SO ORDERED**.

February 27, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE